608 S.E.2d 474

**The STATE, Appellant,**

v.

**Michael T. GOVERNOR, Respondent.**

**No. 3925.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2004.

Decided Jan. 24, 2005.

610

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Solicitor Ralph E. Hoisington of Charleston, for Appellant.

Assistant Appellate Defender Robert M. Pachak, of Columbia, for Respondent.

STILWELL, J.

The State appeals the trial court's suppression of seized drugs the State intended to admit in this drug prosecution. We reverse.

## BACKGROUND

On Friday, June 7, 2002, South Carolina Highway Patrol Troopers Anthony Bokern and Marty Housand arrested Michael Governor for open container and trafficking crack cocaine. Governor was a passenger in a vehicle stopped for a window tint violation. While Housand dealt with the driver, who was driving under suspension, Bokern attempted to secure the scene. When Bokern began placing Governor under arrest for an open container violation, Governor reached for his back pocket to pull out a bag. Bokern seized the brown paper bag from Governor's pocket, glanced inside to make certain there was no weapon, and handed it to Housand.

The bag contained multiple clear plastic baggies. Housand weighed and field-tested the contents and obtained a positive result for crack cocaine. Housand did not have a BEST evidence bag with him at the time of the arrest so he placed the drugs in an unsealed evidence bag in the trunk of his patrol car.[1] The drugs remained there over the weekend. On the following Monday morning when he returned to work, Housand placed the drugs in a BEST evidence bag. On Wednesday when he was visiting a fellow officer at a hospital in Columbia, he gave the drugs to the evidence custodian. The custodian's supervisor had set up a separate room in the hospital for the custodian to accept evidence while the officers were visiting their fellow patrolman in the hospital. The custodian transported the drugs to SLED that same day.

Governor was indicted for possession of cocaine with intent to distribute and possession of crack cocaine with intent to distribute. The trial court held a suppression hearing regarding the drug evidence seized by the police. The trial court suppressed the evidence "based on [the officers'] failure to comply with their own guidelines." This appeal followed.

---

1. All controlled substances sent to SLED for analysis must be in a BEST evidence bag.

## DISCUSSION

The State claims the trial court erred in suppressing evidence of seized drugs because it established a sufficient chain of custody for the drugs. We agree.

■■■■ A party offering fungible items, such as drugs, as evidence must establish a chain of custody as far as practicable. *State v. Joseph*, 328 S.C. 352, 364, 491 S.E.2d 275, 281 (Ct.App.1997). Where the substance passed through several hands, the evidence must not leave to conjecture who had it and what was done with it between the seizure and the analysis. "While the proof of chain of custody need not negate all possibility of tampering, it must establish a complete chain of evidence *as far as practicable.*" *Id.* In applying this rule, our courts have found evidence inadmissible "only where there is a missing link in the chain of possession because the identity of those who handled the [evidence] was not established at least as far as practicable." *State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d ·835, 837 (2001). By contrast, where the identity of those who handled the evidence is established, "evidence regarding its care goes only to the weight of the specimen as credible evidence" and not to its admissibility. *Id.; see also State v. Taylor*, 360 S.C. 18, 25, 598 S.E.2d 735, 738 (Ct.App. 2004) (en banc) (holding where the identity of each person in the chain handling evidence is established and the manner of handling is reasonably demonstrated, suppression of the evidence is abuse of discretion, absent proof of tampering, bad faith, or ill motive).

In *State v. Smith*, 326 S.C. 39, 40, 482 S.E.2d 777, 778 (1997), a police officer took a seized vial of blood home with him and placed it in his refrigerator. He did not submit the vial to SLED until two days later. At trial, each person who handled the blood samples testified. *Id.* at 41, 482 S.E.2d at 779. Because there was no evidence the sample was tampered with in any manner and the police officer testified the sample was in the same condition when he submitted it to SLED as when he received it, our supreme court held the storage of the blood sample in the police officer's home went to the weight of the evidence, not its admissibility. *Id.* at 41–42, 482 S.E.2d at 779.

■ In this case, the State produced evidence of each person in the chain of custody and the manner in which the drugs were handled. Bokern testified he handed the drugs to Housand who then weighed and field-tested them. Housand then placed them inside his trunk, where they remained until Monday morning. Housand testified no one else had keys to his patrol car, and no one else drove the vehicle that weekend. Furthermore, he did not "alter or mess with the substance in anyway." Additionally, Housand testified that on the day of the hearing the drugs were in substantially the same condition as they were the day of the arrest. Lastly, Dayle Blackmon, the evidence custodian, testified Housand gave her the drugs at the hospital on Wednesday, June 12, 2002, and she delivered them to SLED.

The trial court did not find any missing link in the custodial chain or proof of tampering, bad faith, or ill motive. Instead, the court suppressed the evidence based on the officers' failure to comply with the Department of Public Safety's policy directives on evidence. The directives require "[a]ll property/evidence [to] be submitted to the evidence custodian by the end of the shift or as soon as possible thereafter." In Section IX, the directives also require "[a]ll controlled substances ... [to] be transported for analysis within 72 hours of the seizure." Furthermore, the "[e]vidence/property shall not be stored in the patrol vehicle except when being transported from the scene to the place of storage .... [and] shall not remain with the officer for a prolonged period of time."

Obviously, Housand did not comply with these department directives. However, although this failure was the proper subject of cross-examination of the witness for credibility, it was not a proper basis for suppression. Because the State presented a complete chain of custody, the trial court abused its discretion in suppressing the drug evidence. *State v. Foster*, 354 S.C. 614, 620–21, 582 S.E.2d 426, 429 (2003) (holding rulings regarding the admissibility of evidence are within the trial court's discretion and will not be reversed absent an abuse of that discretion).

**REVERSED.**

ANDERSON and SHORT, JJ., concur.